## In re WorldCORP, INC. and WorldCorp Acquisition Corp., Debtors.

Nos. 99–298(MFW) thru 99–306(MFW).

United States Bankruptcy Court, D. Delaware.

Aug. 17, 2000.

Brendan Linehan Shannon, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, Robin E. Keller, Kenneth Pasquale, Stroock & Stroock & Lavan, LLP, New York City, for Liquidating Agent.

Joel Lewittes, Parker Chapin, LLP, New York, City, for the Atlas Companies, Inc.

Daniel K. Astin, Maria Giannarakis, Office of the United States Trustee, Philadelphia, PA.

### OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

## I. INTRODUCTION

This case is before the Court on the Motion of W. Joseph Dryer, the Liquidating Agent of WorldCorp, Inc., and WorldCorp Acquisition Corp. (collectively, "the Debtors") for an order compelling the Atlas Companies, Inc. ("Atlas") to make the payment mandated by this Court in an order dated November 18, 1999. After a hearing and briefing by the parties, we grant the Debtors' motion.

## II. JURISDICTION

This Court has jurisdiction over this matter, which is a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(1), (b)(2)(A), (B), (E) and (O).

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is applicable to contested matters pursuant to Rule 9014.

## III. PROCEDURAL AND FACTUAL BACKGROUND

On February 12 and July 2, 1999, WorldCorp, Inc., and WorldCorp Acquisition Corp. filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, respectively. On March 3, 2000, the Debtors filed their First Amended Joint Liquidating Plan of Reorganization ("the Amended Plan"), which was confirmed on May 23, 2000. Under the Amended Plan the Liquidating Agent, under the supervision of a Liquidating Committee comprised of three creditor representatives, is charged with the responsibility for, *inter alia,* administering the liquidation of the Debtors' assets and has the power to prosecute legal claims held by the estate.

On its petition date, WorldCorp Inc.'s assets were encumbered by liens securing $31 million in obligations, which the Debtors claim were mostly incurred in connection with WorldCorp Inc.'s acquisition of Atlas. On July 13, 1999, the Debtors filed an adversary proceeding seeking to set aside this transaction as a fraudulent transfer. The Defendants in that proceeding, which included Atlas, asserted third-party claims against certain of the Debtors' former officers and directors. Subsequently, the parties entered into a Settlement Agreement, by which all of the claims and potential claims between and among the parties and their present and former affiliates, officers, directors, employees and related parties were resolved. The parties signed a Release Agreement in conjunction with the Settlement Agreement which provided for rescission of the transaction and the release of all liens held by Atlas' stockholders on the Debtors' assets. The Release Agreement states in relevant part:

The Atlas Companies by and on behalf of themselves and their respective subsidiaries, affiliates, predecessors, successors, heirs and assigns ... for good and valuable consideration ... hereby acknowledge, hereby release, extinguish and discharge forever WorldCorp, Inc., and WorldCorp Acquisition Corp., their respective subsidiaries, affiliates, predecessors, successors, heirs and assigns ... from any and all actions, causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, contracts, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extends, executions, claims and demands whatsoever in law or equity, whether known or unknown ... from the beginning of the world to the day of the date of this release....

(General Mutual Release Agreement, ¶ 1.) The Release Agreement releases the Debtors from all claims and obligations owed to Atlas except those claims that may arise out of the Settlement Agreement itself. (*Id.*)

Pursuant to the Settlement Agreement, Atlas agreed to pay WorldCorp Acquisition a Tax Sharing Payment with respect to the 1999 consolidated federal tax liability for Atlas and its subsidiaries. Specifically, the Settlement Agreement states:

Upon the filing of the Consolidated Return for 1999 in accordance with section 8(a), Atlas shall pay to or for the account of [WorldCorp] Acquisition as a tax sharing payment an amount (the "Tax Sharing Payment") equal to the excess, if any, of (i) the 1999 consolidated federal income tax liability for Atlas and its subsidiaries ... that would have resulted if such corporations were included in a separate consolidated federal income tax return for 1999 covering the same period for which they were included in the 1999 Consolidated Return over (ii) $200,000, which the parties acknowledge was paid by Atlas in April 1999 as a tax sharing payment.

(Settlement Agreement, ¶ 8(b).)

On October 26, 1999, the Debtors filed a motion seeking approval of the Settlement

Agreement. A hearing was held on the motion on November 18, 1999, at which time an order was entered approving the Settlement Agreement. The Order provided:

> ORDERED, that, upon the filing of the Consolidated Return for 1999 in accordance with Section 8(a) of the Settlement Agreement, if a Tax Sharing Payment is due under Section 8(b) of the Settlement Agreement, Atlas shall pay (i) to Advisors, as agents for the Paper Shareholders, from the Tax Sharing Payment an amount equal to the lesser of the Tax Sharing Payment or the Additional Principal payment as specified in section 8(c), and (ii) to [WorldCorp] Acquisition any remaining balance of the Tax Sharing Payment;

(Order Approving Settlement Among WorldCorp, Inc., WorldCorp Acquisition Corp. and the Atlas Companies, Inc., pp. 4–5.)

Although Atlas acknowledges that it owes the 1999 Tax Sharing Payment (which totals $188,346) in accordance with the Order, Atlas refuses to make the payment because it claims that Atlas and the Debtors had an oral agreement concerning the 1998 Tax Sharing Payment. Atlas claims that on December 31, 1998, it made an estimated payment of $1,000,000 on the 1998 tax payment. Its actual liability was only $804,000 and, therefore, Atlas claims that the Debtors owe it a credit of $196,000 which offsets the $188,346 payment that the Debtors claim Atlas owes for 1999. Because Atlas refuses to comply with the Order, the Debtors have filed this motion to compel.

## IV. DISCUSSION

Atlas and the Debtors executed a Release Agreement in conjunction with the Settlement Agreement which expressly released the Debtors from any claims "known or unknown," from the beginning of time until the date of the release. The only exception to the release is for claims arising under the Settlement Agreement itself. Consequently, Atlas' claim concerning the 1998 Tax Sharing Payment is precluded unless it is somehow deemed to have arisen under the Settlement Agreement.

Therefore, the issues before this Court are 1) whether the Debtors' motion to compel Atlas to make the 1999 Tax Sharing Payment was brought in accordance with proper procedure; and 2) whether the parol evidence rule precludes Atlas from introducing evidence of a former agreement in defense of the motion to compel.

### A. Procedure

The Debtors assert that, pursuant to section 105(a)[2], we have the power to issue an order compelling Atlas to make the 1999 Tax Sharing Payment in accordance with the Settlement Agreement regardless of whether the dispute is brought as an adversary proceeding or by motion as a contested matter.

Atlas on the other hand, argues that although our equitable powers are broad under section 105(a), that power may not be used to circumvent the express provisions of the Federal Rules of Bankruptcy Procedure. Specifically, Atlas argues that the Debtors' motion is procedurally defective because the Debtor should have sought relief in an adversary proceeding pursuant to Rule 7001 rather than by motion. Fed. R. Bankr.P. 7001(1), (7) (requiring an application to recover money or property or for other equitable relief be brought as an adversary proceeding). See, e.g., In re Gledhill, 76 F.3d 1070, 1079–80 (10th Cir.1996) (a party seeking equitable relief pursuant to section 105(a) must file

---

2. Section 105(a) states that "[t]he court may issue any order, process or judgment that is necessary to carry out the provisions of this title...." 11 U.S.C. § 105(a).

an adversary proceeding); *United States v. Gilmore,* 226 B.R. 567, 576 (E.D.Tex. 1998) (same); *In re Nasco,* 117 B.R. 35, 38 (Bkrtcy.D.Puerto Rico 1990) (same); *In re Monetary Group et. al.,* 55 B.R. 297, 299 (Bkrtcy.M.D.Fla.1985) (same).

Rule 7001 designates ten types of actions which must be brought as adversary proceedings in bankruptcy cases. As relevant to the instant case, Rule 7001(1) and (7) state that an adversary proceeding must be filed "(1) [to] recover money or property ..." and "(7) to obtain an injunction or other equitable relief." Fed. R. Bankr.P. 7001(1) and (7). Therefore, the plain language of the Rule 7001 appears to dictate that the Debtors should have raised this issue in an adversary complaint not by motion.

 While it is true as a general proposition that a claim to recover money or property or to obtain an injunction or other equitable relief must be brought as an adversary proceeding, that general rule is not applicable to this case. In this case, the Debtors are merely seeking to enforce an order already in place. The case was originally brought by the Debtors as an adversary proceeding. The adversary proceeding was resolved by a Settlement Agreement pursuant to which we issued the order the Debtors now seek to enforce. Thus, we conclude that an adversary proceeding is not necessary where the relief sought is the enforcement of an order previously obtained. *See, e.g., In re Continental Airlines, Inc.,* 236 B.R. 318, 327 (Bankr.D.Del.1999) (motion to enforce injunction contained in confirmation order was not procedurally defective).

## B. *Parole Evidence Rule*

The Debtors argue that Atlas is obligated to make the Tax Sharing Payment because the Settlement Agreement and the Order compels Atlas to do so. Atlas, the Debtors urge, has no right to offset any

credit that it claims under the 1998 Tax Sharing Payment because the Settlement Agreement at issue only covers the 1999 Tax Sharing Payment and makes no mention of any obligations on the part of either party regarding the 1998 taxes. Any evidence of prior or contemporaneous agreements concerning the 1998 tax liabilities which was not included in the written Settlement Agreement is extrinsic evidence which the Debtors argue is excluded by the parol evidence rule.

Atlas, on the other hand, claims that the parties had an oral agreement regarding the 1998 taxes evidenced by other documentation which Atlas urges us to consider. This other documentation, Atlas argues, is necessary to clarify and complete the language of section 8(a) of the Settlement Agreement.

 According to the parol evidence rule, if the parties have reduced their agreement to writing, no evidence of any prior oral or written agreement may be offered to contradict, vary, add to or subtract from the terms of the writing. *In re Uni-Rty Corp.,* 191 B.R. 595, 597 (Bankr. S.D.N.Y.1996). The rule is based upon an assumed intention of the parties, evidenced by an unambiguous written contract, to protect themselves from the uncertainties of oral testimony, infirmity of memory and death of witnesses and to prevent fraud and perjury. *Id.* However, there are three noted exceptions to the parol evidence rule. Extrinsic evidence will be admitted 1) to clarify an ambiguous agreement; 2) to complete a partially integrated agreement; or 3) to correct a mistake in reducing the agreement to a writing. *In re Okura & Company (America), Inc.,* 249 B.R. 596, 614 (Bankr.S.D.N.Y.2000); *W.W.W. Assocs. v. Giancontieri,* 77 N.Y.2d 157, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990); *Chimart Assocs. v. Paul,* 66 N.Y.2d 570, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986); *Intercontinental Planning*

*Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969) [3].

### 1. *Clarify*

■ If the terms of an agreement are ambiguous, that is, the language of the agreement lends itself to more than one interpretation, then extrinsic evidence will be admitted to clarify the ambiguity. A phrase contained in a written agreement is only ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Walk-in Med. Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987); *Okura*, 249 B.R. at 603.

■ In the instant case, we conclude that the Settlement Agreement is not ambiguous. Atlas expressly agreed under paragraph 8 of the Settlement Agreement to pay, on WorldCorp Acquisition's behalf, a specific amount as a tax sharing payment with respect to the 1999 consolidated federal tax liability for Atlas and its subsidiaries. The parties also exchanged mutual general releases of any and all claims and potential claims between them arising prior to the date of the release, except those that might arise under the Settlement Agreement itself. The Settlement Agreement made no mention of the 1998 Tax Sharing Payment. We agree with the Debtors that Atlas was not prevented in any way from bargaining with the Debtors for a similar provision to be included in the Settlement Agreement concerning the 1998 taxes. Atlas failed to do so and will not be allowed to now claim the agreement is ambiguous because it does not contain a provision which in hindsight Atlas realizes it should have sought.

■ We, therefore, conclude that the parol evidence rule precludes any evidence regarding the 1998 Tax Sharing Payment. Such evidence would contradict the language of the Settlement Agreement which is explicitly limited to the 1999 Tax Sharing Payment; as well as the express language of the Release Agreement. "It is well-settled that where the terms of a written contract are clear and unambiguous, the intention of the parties must be found therein and extrinsic proof tending to substitute a contract different from that evidenced by the writing is inadmissible." *Okura*, 249 B.R. at 614 (parol evidence is not admissible to create ambiguity); *Harvis, Trien & Beck, P.C. v. Federal Home Loan Mortgage Corp.*, 187 B.R. 856, 860 (Bankr.E.D.N.Y.1995).

### 2. *Complete*

■ A completely integrated contract precludes extrinsic proof to add or vary its terms. *In re Primex International Corp.*, 89 N.Y.2d 594, 600, 657 N.Y.S.2d 385, 679 N.E.2d 624 (1997). If an agreement contains a merger clause, the agreement is deemed to be a completely integrated expression of the parties' agreement to the exclusion of extrinsic evidence to the contrary. *Id.* A general merger provision means that "the agreement will represent the entire understanding between the parties, requiring full application of the parole evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing." *In re Primex International Corp.*, 89 N.Y.2d 594, 599, 657 N.Y.S.2d 385, 679 N.E.2d 624 (1997).

■ In the instant case, the Settlement Agreement contained a merger clause providing that [t]his Agreement constitutes

3. We apply New York law to resolve this dispute because the Escrow Agreement annexed to and referenced by the Settlement Agreement provides for the application of New York law to disputes arising under the Settlement Agreement.

the entire agreement of the parties with respect to its subject matter and supercedes and cancels all prior and contemporaneous agreements, claims, representations and understandings of the parties in connection with such subject matter. (Settlement Agreement, ¶ 11.) The inclusion of the merger clause evidences the parties' intent that the Settlement Agreement be a completely integrated expression of the agreement reached between the parties. Consequently, any extrinsic evidence that Atlas may seek to introduce regarding the 1998 Tax Sharing Agreement is excluded because it would add to or vary the terms of this completely integrated contract.

### 3. *Correct*

Atlas, in the alternative, urges that we exercise our power to correct the agreement to effectuate the parties' clear intent. Atlas argues that the Settlement Agreement was, deliberately or inadvertently, improperly drafted. In support of this argument, Atlas cites *Time Warner Cable of New York City v. City of New York*, 943 F.Supp. 1357, 1389 (S.D.N.Y.1996) for the proposition that parol evidence may be considered to interpret a contract and give effect to the parties' intent even if the contract contains a merger clause. However, the *Time Warner* case held that parol evidence may be admitted if the agreement is ambiguous and if the evidence sought to be admitted does not add to, vary or contradict the agreement. *Id.* at 1389–90.

In contrast, Atlas proposes that we rewrite the Settlement Agreement to include a provision covering the 1998 Tax Sharing Payment as well as the 1999 Tax Sharing Payment. In essence, Atlas seeks the equitable remedy of reformation. Reformation is applicable as an exception to the parol evidence rule where there has been a mutual mistake or fraud[4] in reducing an agreement to writing. *See, e.g., Chimart*, 498 N.Y.S.2d 344, 489 N.E.2d at 233–34. It is not available where a party

to a fully integrated, unambiguous, executed contract seeks to rewrite the contract to include terms that a party wishes he had bargained for, but did not, prior to execution of the agreement. *Id.*

Here, there is no evidence of mutual mistake or fraud. The Settlement Agreement was negotiated, drafted and reviewed before execution by competent attorneys. The only allegation made by Atlas is that the document was "improperly" drafted. We, therefore, find that Atlas has not submitted an appropriate ground upon which reformation may be granted and the request is denied.

### V. *CONCLUSION*

We conclude that the plain language of the Settlement Agreement does not afford Atlas any credit for amounts it paid to WorldCorp in 1998. The parol evidence rule bars Atlas from introducing any extrinsic evidence to vary the terms of the Settlement Agreement. Consequently, the Debtors' motion will be granted and Atlas is compelled to comply with the Court's Order and make the 1999 Tax Sharing Payment in the amount of $188,346.

An appropriate Order is attached.

---

4. Atlas does not assert that the fraud exception applies.